**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **IUE-CWA LOCAL 901,** *on behalf of* *itself and on behalf of itself and all others similarly situated*, | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | **Case No. 1:19-cv-00389-HAB-SLC** |
| **SPARK ENERGY GAS, LLC,** *CT Corporation System*, | ) ) ) | |
| **Defendant.** | ) ) | |

## OPINION AND ORDER

On April 9, 2021, Plaintiff filed a motion (ECF 58) and an accompanying memorandum (ECF 59), seeking the Court's leave to file a proposed second amended complaint (ECF 59-1). On April 23, 2021, Defendant filed a response (ECF 61), to which Plaintiff replied on April 30, 2021, attaching a declaration and several new exhibits to its reply brief (ECF 64). On May 7, 2021, Defendant filed a motion to strike the declaration and exhibits, or in the alternative for leave to file a sur-reply to address such evidence. (ECF 67). On May 20, 2021, Plaintiff filed a response (ECF 68), and on May 27, 2021, Defendant filed a reply (ECF 69).

Also before the Court is an interrelated motion for sanctions filed by Defendant on April 16, 2021, alleging that Plaintiff made material misrepresentations in its motion for leave to amend and its proposed second amended complaint. (ECF 60; ECF 60-1). Plaintiff filed a response to that motion on April 30, 2021 (ECF 63), to which Defendant replied on May 7, 2021 (ECF 66).

Accordingly, all three matters are fully briefed and ripe for adjudication. For the following reasons, Defendant's motion to strike or in the alternative for leave to file a sur-reply

(ECF 67) is DENIED; Defendant's motion for sanctions (ECF 60) is DENIED WITHOUT

PREJUDICE; and Plaintiff's motion for leave to amend (ECF 58) is GRANTED.

## I. Background

Plaintiff initiated this matter in state court on August 14, 2019, on behalf of itself and a

class of others similarly situated, alleging that Defendant—an alternative energy supplier—

engaged in "deceptive, bad faith, and unfair pricing practices that have caused businesses and

consumers in Indiana to pay considerably more for their natural gas than they should have

otherwise paid."  (ECF 3 ¶ 1).  More specifically, Plaintiff brought an Indiana Deceptive

Consumer Sales Act ("IDCSA") claim, Ind. Code § 24-5-0.5-4, a breach of contract claim, and

an unjust enrichment claim.  (ECF 3).  After a timely removal (ECF 1), Defendant filed a motion

to dismiss for failure to state a claim upon which relief could be granted pursuant to Federal Rule

of Civil Procedure 12(b)(6) (ECF 5), which District Judge Holly Brady denied (ECF 20).  On

March 10, 2020, the Court conducted a preliminary pretrial conference (ECF 29), where it set

May 1, 2020, as the last date for Plaintiff to amend its pleadings without leave of Court (ECF 30

at 2).  On March 24, 2020, Plaintiff filed its first amended complaint.  (ECF 31).  Plaintiff's

deadline to seek the Court's leave to amend its pleading was subsequently extended to

September 28, 2020.  (ECF 49, 53).

Plaintiff now seeks to amend its complaint again to add two new sets of allegations.

(ECF 59 at 4).  First, while Plaintiff initially alleged that its 2004 customer agreement with

Defendant required Defendant to base rates on "market prices," Plaintiff now seeks to allege that

the parties' contract required Defendant to base its rates on "'market prices' or 'market

conditions.'"  (*Id.* at 4; *see also* ECF 31 ¶ 3; ECF 59-1 ¶ 3, ECF 59-2 ¶ 3 (red-line comparison of

the first amended complaint and proposed second amended complaint)).[1]  As Plaintiff explains in

its response to the motion for sanctions, the "market prices" language initially used was drawn

from a 2014[2] "form contract" received as a result of a public records request to the Indiana

Utility Regulatory Commission ("IURC").[3]  (ECF 63 at 8; ECF 63-3 at 5 ("Upon expiration of

the Primary Term, Customer shall be switched to a variable rate based upon then current market

prices . . . .")).  Plaintiff seeks to add the "market conditions" language based upon contracts

Defendant has produced ranging from 2010 to 2019 which reflect that the variable rate "may

vary according to market conditions."  (ECF 63 at 9-10).  Second, Plaintiff seeks to detail the

ways Defendant allegedly based its Indiana rates on non-market rates, in contravention of its

customer agreements, which Plaintiff discovered, at least in part, through Defendant's Rule

30(b)(6) deposition.  (ECF 59 at 4; ECF 59-1 ¶¶ 51-54).

Defendant, in support of its motion for sanctions, asserts that Plaintiff is attempting to

mislead the Court.  As Defendant explains, Plaintiff has failed to locate its original customer

agreement or anyone who remembers its actual terms.  (ECF 60-1 at 2).  Defendant contends that

the purported term in Plaintiff's customer agreement fixing natural gas rates to "market factors"

is fictitious, and Plaintiff's reliance on later customer agreements—made years after Plaintiff's

own customer agreement—is an intentional attempt to mislead the Court.  (*Id.* at 2-3).  Further,

Defendant argues that Plaintiff's IDCSA claim should be dismissed because it is based on

deposition evidence Plaintiff did not know of, and therefore could not have relied upon, when

---

[1] Plaintiff explains that neither it nor Defendant have been able to locate or produce the actual customer agreement between the parties.  (*Id.*).

[2] While Plaintiff alleges that the contract existed as early as 2011 based on the file name in the footer of the document ("SEG_TOS_IN_CO_20110721"), the contract was signed on December 23, 2013, and applied to a term from January 1, 2014, to December 31, 2015.  (*Compare* ECF 63 at 8, *with* ECF 63-3 at 2).

[3] The parties to this contract were Defendant and Winona PVD Coating, LLC.  (ECF 63-3 at 3).  For ease of reference, the Court will refer to this document as the "Winona Contract."

forming the terms of the contract.  (*Id.* at 12).  In its response to the motion for leave to amend, Defendant reiterates its argument that Plaintiff's case should be dismissed as a sanction.  (ECF 61 at 5, 10).  In opposition to Plaintiff's motion for leave, Defendant argues that Plaintiff has failed to establish good cause to modify the Court's Scheduling Order, and that—in any event— Plaintiff's second amended complaint would be futile.  (*Id.* at 5-6).

Plaintiff, in its response to the motion for sanctions, contends that alternative gas suppliers like Defendant use uniform customer contracts and thus it is likely Plaintiff's contract contained similar terms to the Winona Contract and other consumer contracts received from Defendant through discovery.  (ECF 63 at 9).  Further, Plaintiff alleges that as discovery continues different and earlier drafts of the parties' contracts may be produced.  (*Id.* at 10). Similarly, Plaintiff contends that pleading the supposed terms of the contract without producing it is not in and of itself improper.  (*Id.* at 18-19).  Rather, Plaintiff asserts that its counsel conducted a reasonable investigation before filing both the complaint and seeking leave to file the second amended complaint.  (*Id.*).

In the alternative, Plaintiff contends that Defendant's motion should be denied on procedural grounds.  First, Plaintiff argues Defendant violated Rule 11's "safe harbor" provision by moving for sanctions after Plaintiff had filed its motion for leave to amend.  (*Id.*).  Plaintiff next contends that Defendant was aware that it lacked a copy of the parties' contract as early as March 2020 and as a result, Defendant's motion for sanctions is untimely.  (*Id*. at 26).  Finally, Plaintiff alleges that the motion is improper under Rule 11 because it asserts there are multiple grounds for sanctions—as opposed to Rule 11 separately.  (*Id.* at 27-31).  Because Plaintiff contends it should prevail on the motion for sanctions, it also seeks its attorney fees pursuant to Rule 11(c).  (*Id.* at 31-32).

In its reply to its motion for leave to amend, Plaintiff asserts that "good cause" exists to allow a belated amendment under Rule 16 because the proposed amended complaint is in response to new facts learned through discovery and in response to Defendant's threat of sanctions. (ECF 64 at 1-5). Further, Plaintiff urges that its second amended complaint plausibly alleges breach of contract and unjust enrichment claims and is not futile. (*Id.* at 5-16). Finally, Plaintiff alleges that Defendant would not be unduly prejudiced by the amendment. (*Id.* at 16).

In its reply to the motion for sanctions, Defendant primarily reiterates that the language in the first amended complaint that its rates "would be based on market prices," suggests that Plaintiff based its pleadings on the language of the parties' contract—which it did not know. (ECF 66 at 7). Defendant further alleges that the proposed second amended complaint—and the more expansive language used therein—fails to correct the various problems with Plaintiff's first amended complaint. (*Id.* at 16). Additionally, Defendant responds to Plaintiff's timeliness argument by asserting that under the totality of the circumstances Defendant was reasonable in waiting to seek sanctions until after it provided Plaintiff with multiple opportunities to cure the complaint's defects, and furthermore, that Rule 11 does not prevent it from advancing multiple grounds for sanctions. (*Id.* at 17-19).

Defendant also filed a motion seeking to strike the declaration and four exhibits (ECF 64-1 through ECF 64-5) that Plaintiff attached to its reply to the motion for leave to amend (ECF 64), or in the alternative, requesting the Court grant it leave to file a sur-reply to address such evidence (ECF 67). Plaintiff in response asserts that the declaration and exhibits and a sur-reply are unnecessary, in part because the first three exhibits were proffered in response to a contention raised in Defendant's reply—namely that the motion for leave to amend was untimely. (ECF 68

5

at 2-3).  Defendant in its reply primarily seeks to distinguish the caselaw relied upon by Plaintiff in its response.  (ECF 69).

## II.  Analysis

### A.  Defendant's Motion to Strike/Leave to File a Sur-reply

As mentioned, Defendant seeks to strike five attachments to Plaintiff's reply to the motion for leave to amend, or alternatively seeks leave to file a sur-reply to address this evidence.  (ECF 67).  The first is a declaration by Plaintiff's counsel attesting to the accuracy of the remaining attachments.  (ECF 64-1).  The second is an email chain in which Plaintiff's counsel discusses the production of additional customer contracts.  (ECF 64-2).  The third and fourth are Defendant's responses to Plaintiff's requests for admission and requests for production respectively.  (ECF 64-3; ECF 64-4).  The fifth is a transcript of United States District Judge Michael A. Shipp's oral ruling on a motion to dismiss in the case of *Janet Rolland v. Spark Energy*, 3:17-cv-2680-MAS-LHG (Dec. 17, 2017, D.N.J.).  (ECF 64-5).  Plaintiff cites the second, third, and fourth attachments in support of its assertion that Defendant has not been forthcoming with discovery and has refused to provide information regarding its document retention policy.  (ECF 64 at 3-4).  Further, Plaintiff cites the *Rolland* decision in support of its contention that its proposed second amended complaint is not futile.  (*Id.* at 10).

"New arguments and evidence may not be raised for the first time in a reply brief."  *PSG Energy Grp., LLC v. Krynski*, No. 1:18-cv-03008-TWP-TAB, 2020 WL 2059944, at *3 (S.D. Ind. Apr. 29, 2020).  If a party introduces new evidence or facts in a reply brief, "the proper response [is] a motion to strike the offending portions of the reply brief or to seek leave to file a response to the reply brief."  *Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994); *see also Gold v. Wolpert*, 876 F.2d 1327, 1331 n.6 (7th Cir. 1989).  That being said, "a party may expand

upon and clarify arguments in its reply brief." *PSG Energy Grp.*, 2020 WL 2059944, at *3. "As

a general rule, motions to strike are disfavored because they potentially serve only to delay." *Id.*

Strictly speaking, the Local Rules permit parties to file a motion, a response, and a reply,

but do not contemplate the filing of a sur-reply. *Lafayette Life Ins. Co. v. City of Menasha*, *Wis*.,

No. 4:09 CV 64, 2010 WL 4553667, at *1 (N.D. Ind. Nov. 3, 2010) (citing N.D. Ind. L.R. 7-

1(a)). Accordingly, "[t]his Court generally doesn't permit litigants to file a surreply brief." *Hall*

*v. Forest River, Inc.*, No. 3:04-CV-259-RM, 2008 WL 1774216, at *1 n.1 (N.D. Ind. Apr. 15,

2008) (citation omitted). The Court, however, has allowed a sur-reply when it raises or responds

to a new issue or development in the law. *See id.*; *see also Merril Lynch Life Ins. Co. v. Lincoln*

*Nat'l Life Ins. Co.*, No. 2-09-CV-158, 2009 WL 3762974, at *1 (N.D. Ind. Nov. 9, 2009).

Here, without addressing the merits of Plaintiff's arguments, the Court sees no need to

strike the material attached to Plaintiff's reply. First, as mentioned, the declaration of Plaintiff's

counsel (ECF 64-1) simply attests to the truth and accuracy of the other attachments. As such, it

is not new evidence or arguments going to the merits of the motion seeking leave to file the

proposed second amended complaint.[4] As to the email chain and discovery responses, these

appear to be attached merely to expand upon Plaintiff's initial argument. Indeed, in Plaintiff's

memorandum in support of its motion for leave to amend, Plaintiff contends that "Defendant

only responded to Plaintiff's request for its original contract terms in October 2020," that it did

not believe that Defendant had completed its review and production of responsive documents

until March 31, 2021, and that it did not learn "specific details about Defendant's variable rate

---

[4] In fact, counsel's declaration is not required by this Court's local rules and is largely redundant. *See Innogenetics, N.V. v. Abbott Lab's*, 578 F. Supp. 2d 1079, 1103 (W.D. Wis. 2007), *aff'd in part, rev'd in part*, 512 F.3d 1363 (Fed. Cir. 2008) ("Although I need not reach the point, I note that Bloodworth's omission of a statement that her declaration is filed under penalty of perjury is not an issue. As an officer of the court, Bloodworth files all documents subject to the provisions of Fed. R. Civ. P. 11.").

pricing procedure" until Defendant's Rule 30(b)(6) deposition.  (ECF 59 at 9).  Plaintiff only cites to the email and discovery responses in support of its argument that it diligently sought the examples of Defendant's customer contracts (ECF 64 at 3), after Defendant asserted that Plaintiff should have been aware of the "market condition" language sooner (ECF 61 at 15-16).  While Plaintiff does not contend that Defendant "actively stymied discovery regarding older versions of its contracts" until its reply, on the whole Plaintiff's argument is consistent.  (*Id.*).

Finally, it is true that Plaintiff did not cite the *Rolland* case until its reply.  But again, Plaintiff cites the case in support of its contention that the proposed second amended complaint is not futile (*id.* at 10)—an argument it advanced in its initial memorandum (ECF 59 at 12).  The fact that Plaintiff cites to a previously uncited opinion—an unpublished, non-binding opinion at that—does not mean that it impermissibly introduced new evidence.  *See Westfield Ins. Co. v. TCFI Bell SPE III LLC*, No. 1:16-cv-02269-TWP-MJD, 2019 WL 1330456, at *4 (S.D. Ind. Mar. 25, 2019) ("The fact that Westfield relied upon a previously uncited case does not mean that it has presented a new argument.").  While the Court is cognizant of Defendant's assertion that Plaintiff's reliance on Judge Shipp's oral opinion is misleading given his later written ruling on a separate motion to dismiss (*see* ECF 67 at 3), the Court has now been provided with Judge Shipp's written opinion as well (*see* ECF 68-2).  To the extent that either ruling is relevant to this Court's decision, the Court is competent to review the material itself.

Accordingly, Defendant's motion to strike or in the alternative for leave to file a sur-reply (ECF 67) is DENIED.  The Court will turn its attention to Defendant's motion for sanctions (ECF 60) and Plaintiff's motion for leave to amend (ECF 58).

*B. Defendant's Motion for Sanctions*

As discussed, Defendant primarily argues that Plaintiff's assertion in its original complaint and first amended complaint that its "variable rate for natural gas 'would be based on market prices'" was a material misrepresentation, and that Plaintiff's use of quotation marks was meant to purposely mislead the Court that the parties' contract contained that language when neither party has been able to produce a copy of that contract.  (ECF 60-1 at 2-3).  Defendant similarly contends that Plaintiff's proposed second amended complaint actually exacerbates this issue by again making baseless claims regarding the variable rate—asserting that the variable rate "would be based on market prices" again in quotes.  (ECF 60-1 at 7).  As such, Defendant requests that Plaintiff's case be dismissed as a sanction pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and this Court's inherent authority.  (ECF 60 at 1).  Plaintiff in response maintains that while it does not have a copy of the parties' original contract, its counsel performed a reasonable investigation prior to initiating this lawsuit, and the "market price" language came from a "form contract" used by Defendant in 2011.  (ECF 63 at 12-17).

Federal Rule of Civil Procedure 11(b)(3) states that when an attorney files a pleading, that person "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  If the Court determines that Rule 11(b) has been violated, it may impose sanctions on the offending party including dismissal of that party's case.  Fed. R. Civ. P. 11(c); *see also* Fed. R. Civ. P. 11, advisory committee notes to 1993 amendments.  "While the Rule 11 sanction serves an important purpose, it is a tool that must be used with utmost care and caution."  *Fed. Deposit Ins. Corp. v. Tekfen Constr. & Installation*

*Co.*, 847 F.2d 440, 444 (7th Cir. 1988). In general, a Rule 11 motion looks at the conduct of a party and its attorney, not the merits of a case. *See* Fed. R. Civ. P. 11 advisory committee notes to 1993 amendments ("Rule 11 motions . . . should not be employed . . . to test the sufficiency or efficacy of allegations in the pleadings; *other motions are available for those purposes*," (emphasis added)); *see also Moeck v. Pleasant Valley Sch. Dist.*, 844 F.3d 387, 391 (3d Cir. 2016) ("The District Court [when denying a Rule 11 motion] . . . further explained that the factual issues identified in Defendants' sanctions motions would be best resolved at summary judgment or trial."); *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 416 (S.D.N.Y. 2003) ("Hence, a Rule 11 motion for sanctions is not a proper substitute for a motion for summary judgment.").

Similarly, the Court may impose sanctions pursuant to 28 U.S.C. § 1927 upon any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . ." Said another way, the Court may impose sanctions when an attorney has "acted in an objectively unreasonable manner by engaging in a 'serious and studied disregard for the orderly process of justice' . . . or where a 'claim [is] without a plausible legal or factual basis and lacking in justification.'" *Pac. Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119 (7th Cir. 1994) (alterations in original) (quoting *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1998)). The Court may also sanction an attorney engaging in "vexatious conduct," that is, conduct which "involved either subjective or objective bad faith." *Id*. (citing *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184 (7th Cir.1992)). Finally, the Court "has inherent power 'to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)).

10

Ultimately, Defendant fails to show that Plaintiff and its counsel engaged in conduct justifying dismissal under Rule 11—at least at this time.  Again, the parties agree that they had entered into a contract for the purchase and sale of natural gas, but neither has yet been able to produce the written contract.  While "the best evidence of the terms of a contract in writing is the writing itself," 32A C.J.S. Evidence § 1249, under certain circumstances, a party may introduce extrinsic or parole evidence to establish the terms of a contract if the original written instrument is lost, s*ee Marksill Specialties, Inc. v. Barge*r, 428 N.E.2d 65, 68 (Ind. Ct. App. 1981)[5]; *see also* 32A C.J.S. *Evidence* § 1249  ("Additionally, a party can use secondary evidence to determine a lost contract's terms, where the contract's unavailability is sufficiently explained and it is established that the contract is not unavailable because of bad faith.").  While the interpretation of the unambiguous terms of a contract may be considered a question of law, the existence and meaning of ambiguous or disputed terms is a question of fact.  *See Podolsky v. Alma Energy Corp.*, 143 F.3d 364, 369 (7th Cir. 1998); *see also City of Indianapolis v. Twin Lakes Enters., Inc.*, 568 N.E.2d 1073, 1079 (Ind. Ct. App. 1991) ("[W]here the existence . . . of a contract *or the terms thereof is the point in issue*, and the evidence is conflicting or admits of more than one inference, it is for the jury to determine whether a contract in fact exists." (emphasis added)).  Ultimately then, if neither party is able to produce the contract at issue in this case, it would be Plaintiff's burden to prove to the trier of fact whether or not the contract provided that the

---

[5]  Because the parties' contract concerned the delivery of natural gas to Indiana customers within the state of Indiana, the Court presumes for the time being that Indiana law governs the parties' contract.  *See of Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind. Ct. App. 1997) (detailing Indiana's choice of law principles); *see also Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("When a federal court hears a case in diversity, it does not necessarily apply the substantive law of the forum state; rather, it applies the choice-of-law rules of the forum state to determine which state's substantive law applies.").  In any event, neither party has raised a choice of law issue so the Court will apply Indiana law.  *See Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 266 (7th Cir. 2016), *as amended* (Jan. 25, 2017) ("If no party raises a choice of law issue to the district court, the federal court may simply apply the forum state's substantive law." (citation and internal quotation marks omitted)).

variable rate prices would be based on "market condition" or pegged to "market rates." *See Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1157 (Ind. Ct. App. 2010) ("Although Smither does not dispute that a contract of some kind existed between him and Providian, it is Asset's burden in this action to prove the terms of that contract.").

Plaintiff may not be able succeed in that endeavor, but that does not mean its counsel violated Rule 11. Indeed, Rule 11 only requires that an attorney certify "that there is (*or likely will be*) 'evidentiary support' for the allegation, not that the party will prevail with respect to its contention regarding the fact." Fed. R. Civ. P. 11(c), advisory committee notes to 1993 amendments (emphasis added). Further, Plaintiff's argument that Defendant's other customer contracts contained the same or similar terms regarding the variable rate price may be persuasive to the eventual trier of fact. In *Smither v. Asset Acceptance*, a case Defendant cites in support of its argument (ECF 66 at 8), the Indiana Court of Appeals considered a grant of summary judgment in a case where the parties agreed a contract existed but disagreed about its terms, 919 N.E.2d at 1157. While the appellate court ultimately reversed the grant of summary judgment on statute of limitations grounds, it noted:

> A plaintiff's burden to prove the existence of a contract also includes the burden of proving the terms of that contract. . . . It is troubling that Asset has not submitted conclusive proof that the Providian Mastercard agreement Asset submitted controlled Smither's account.
>
> Nonetheless, we observe that all three of the account agreements Asset has provided contain identical language relevant to this case, namely, the provisions regarding default and acceleration. *It is possible that this standard "boilerplate" language was contained in all Providian credit card agreements*.

*Id.* (emphasis added). Given that Plaintiff may attempt to prove the terms of the contract, it would certainly seem reasonable that Plaintiff's attorney investigated the terms of other contracts involving Defendant before filing the complaint in this case.

Defendant does argue that the language in the contracts cited by Plaintiff does not support its contention that similar language appeared in the parties' own contract. Specifically, Defendant contends that language used in the Winona Contract applied to "large customers" but not small or residential customers, and that the contracts Plaintiff relies on are all from years after the parties' own contract. (*See* ECF 60-1 at 2). Such arguments, however, go to the weight that evidence of these contracts should be afforded in determining the terms of the parties' own contract. In other words, these are arguments for trial, or to the extent that Defendant is contending that no reasonable juror could find the parties' 2004 contract contained the language at issue, for summary judgment. *See, e.g.*, *Snider v. Pekny*, 899 F. Supp. 2d 798, 807 (N.D. Ind. 2012). In any event, fact discovery is still ongoing (ECF 53), and there is still the possibility that the parties will find their 2004 contract.

Defendant also argues that Plaintiff's use of quotation marks in its first amended complaint and proposed second amended complaint mislead the Court because it implies that Plaintiff definitively knew the wording of the parties' contract. Defendant contends this prejudiced it during Judge Brady's ruling on its motion to dismiss pursuant to Federal Rule of Civil 12(b)(6). (*See* ECF 20). Defendant's argument seems to be that because Plaintiff used quotation marks, Judge Brady must have believed that the contract truly used that phrase and held it against Defendants. But as Judge Brady explained, she was required to "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." (ECF 20 at 2 (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008))). As such, even if Plaintiff did not use quotation marks around the "market rates" language, the Court would have accepted the allegations as true for purposes of ruling on the motion to dismiss. To the extent that quotation

13

marks may have suggested that Plaintiff had stronger evidence than it actually did, this does not strike the Court as justifying sanctions, particularly a sanction as severe as dismissal.  *See Bilharz v. First Interstate Bank of Wis.*, 98 F.3d 985, 989 (7th Cir. 1996) ("[W]e cannot say that her claims were so devoid of factual support that sanctions were appropriate."); *see also Moeck*, 844 F.3d at 391 ("Although some of the factual allegations may have been exaggerated, the record includes evidence that provided a reasonable basis for the representations in the complaints and summary judgment submissions concerning Getz's allegedly aggressive and discriminatory behavior.").

As a final matter, Defendant also argues that Plaintiff's IDCSA claim should be dismissed in light of Plaintiff's Rule 30(b)(6) deposition testimony suggesting that no one reviewed—and therefore relied upon—the terms of the parties' contract.  (ECF 60-1 at 2; ECF 60-2; ECF 66 at 6); *see also Reger v. Ariz. RV Ctrs., LLC*, No. 3:16-CV-778-MGG, 2021 WL 274316, at *16 (N.D. Ind. Jan. 26, 2021) ("To prevail on his [IDCSA], [Plaintiff] must also establish that reliance on [Defendant's] alleged deceptive act caused him to suffer actual damages.").  But Judge Brady already addressed similar arguments in ruling on Defendant's motion to dismiss and found that Plaintiff had adequately pled reliance in support of its IDCSA claim.  (ECF 6 at 5-6; ECF 20 at 7).  As such, Defendant's argument seems to be that Plaintiff cannot prove actual reliance in light of Plaintiff's Rule 30(b)(6) testimony.  Again, Defendant's arguments are more appropriately addressed through summary judgment or trial.

Indeed, at the summary judgment stage Plaintiff may have to overcome Defendant's assertions that Plaintiff did not in fact rely upon the text of the parties' contract, and that reliance was the cause of its alleged injuries.  But the fact that Plaintiff's representative could not testify that someone reviewed the terms of the contract is not necessarily dispositive.  At least in the

14

context of common-law fraud, Indiana courts have held that reliance and causation "may be proven by circumstantial evidence, provided there are facts from which the existence of all the elements can be reasonably inferred." *Plymale v. Upright*, 419 N.E.2d 756, 760 (Ind. Ct. App. 1981). If Plaintiff has circumstantial or direct evidence supporting its IDCSA claim, it will be required to show it at the summary judgment stage. *See Poole v. MED-1 Sols., LLC*, No. 1:18-cv-03255-JRS-MPB, 2020 WL 1317450, at *5 (S.D. Ind. Mar. 20, 2020) (granting summary judgment on an IDCSA claim where Plaintiff failed to offer any evidence of reliance); *see also Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) ("Summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." (citation and internal quotation marks omitted)). Further, if Plaintiff is able to establish a genuine question of material fact, then the matter is reserved for the trier of fact. *See Plymale*, 419 N.E.2d at 760 ("Whether the plaintiffs acted in reliance upon the defendants' representation and whether the plaintiffs were justified in so doing are also on conflicting evidence questions of fact for the jury."). Again, though, Rule 11 motion "should not be employed . . . to test the sufficiency or efficacy of allegations in the pleadings." Fed. R. Civ. P. 11 advisory committee notes to 1993 amendments. As such, like its arguments regarding the parties' contract's terms, Defendant's arguments are at the very least premature. *See Kaplan v. Zenner*, 956 F.2d 149, 152 (7th Cir. 1992) ("[T]he situation contemplated by the committee notes [to Rule 11] is one in which the basis for factual allegations in pleadings cannot be determined until such time as the party claiming those facts has had an adequate opportunity to develop his proof." (quoting *Ezell v. Lincoln Elec. Co.*, 119 F.R.D. 645, 647 (S.D. Miss. 1988), *aff'd*, 863 F.2d 880 (5th Cir. 1988))).

In summary, Defendant has not shown that Plaintiff's allegations in its first amended complaint—or for that matter the proposed second amended complaint as described in greater detail *infra*—are so lacking in a factual basis to be sanctionable under Rule 11. Further, to the extent that Defendant's arguments attack the factual basis of Plaintiff's allegations, its claims are better suited for summary judgment or trial. *See Birch v. Kim*, 977 F. Supp. 926, 938 (S.D. Ind. 1997) ("Defendant's motion for sanctions challenges Plaintiff's claims on the basis of false factual assertions. Therefore, having concluded that the factual dispute between the parties is properly reached by a trier of fact, we view it as inappropriate to consider Defendant's motion for sanctions based on Plaintiff's pleadings at this time." (citation omitted)). Defendant has also not shown that Plaintiff's allegations lack a "plausible legal or factual basis" necessitating sanctions under 28 U.S.C. § 1927, *Pac. Dunlop Holdings, Inc.*, 22 F.3d at 119, or the Court's inherent authority. Accordingly, Defendant's motion for sanctions (ECF 60) will be DENIED WITHOUT PREJUDICE.[6] *See Birch*, 977 F. Supp. at 928. Because Defendant's motion fails on the merits, the Court sees no need to address the parties' procedural arguments.

*C. Plaintiff's Motion for Leave to Amend*

Defendant advances three arguments in opposition to Plaintiff's motion for leave to amend. (ECF 58). First, Defendant contends that Plaintiff's proposed second amended complaint (ECF 59-1) continues to mislead the Court and is based on nothing but "speculation." (ECF 61 at 5). Second, Defendant asserts that Plaintiff has failed to show "good cause" for seeking to amend its complaint after the deadline to do so had passed. (*Id.* at 5-6). Finally,

---

[6] As mentioned, Plaintiff also requests that it be awarded the fees it reasonably incurred defending against Defendant's motion. (ECF 64 at 31-32). Defendant did not specifically address Plaintiff's fee request, contending that "it is plainly meritless in light of [Plaintiff's] bad faith and groundless pleadings." (ECF 66 at 20 n. 17). Rule 11(c)(2) does provide that, "[i]f warranted, the [C]ourt may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Because the Court is denying Defendant's motion for sanctions without prejudice, it does not believe an award of attorney fees is warranted at this time.

Defendant contends that Plaintiff's proposed second amended complaint is futile and causes undue delay to these proceedings. (*Id*. at 7).

Pursuant to Federal Rule of Civil Procedure 16, the Court must issue a scheduling order limiting the time "to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). When a motion to amend is filed after the Rule 16 deadline to do so has passed, the Court is "entitled to apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) [are] satisfied." *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014) (quoting *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011)). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment." *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (citation omitted) (upholding a denial of a motion for leave to amend nine months after the deadline to amend had passed).

Pursuant to Federal Rule of Civil Procedure 15, when a party can no longer amend the pleadings as a matter of right, a party must seek the Court's leave or the written consent of the opposing party. While "[t]he [C]ourt should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), "the decision as to whether to grant a motion to amend a complaint is entrusted to the sound discretion of the trial court," *Cohen v. Ill. Inst. of Tech.*, 581 F.2d 658, 661 (7th Cir. 1978) (collecting cases). Further, leave to amend is "inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992) (citing *Villa v. City of Chi.*, 924 F.2d 629, 632 (7th Cir. 1991)). "Undue prejudice occurs when the amendment 'brings entirely new and separate claims, adds new parties, or at least

17

entails more than an alternative claim or a change in the allegations of the complaint' and when the additional discovery is expensive and time-consuming." *In re Ameritech Corp.*, 188 F.R.D. 280, 283 (N.D. Ill. 2015) (quoting *A. Cherney Disposal Co. v. Chi. & Suburban Refuse Disposal Corp.*, 68 F.R.D. 383, 385 (N.D. Ill. 1975)).

Still more, an amendment is futile if it would not survive a dispositive motion. *See Duthie v. Matria Healthcare, Inc.*, 254 F.R.D. 90, 94 (N.D. Ill. 2008) ("For the plaintiffs, futility is measured by the capacity of the amendment to survive a motion to dismiss." (citing *Crestview Vill. Apts. v. U.S. Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004); *Barry Aviation Inc. v. Land O' Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 n.3 (7th Cir. 2004))). "That means a proposed amendment must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Duthie*, 254 F.R.D. at 94 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In the interests of judicial economy, the district court should 'scrutinize the amended complaint' and 'determine its viability' to decide 'whether filing it would be an exercise in futility.'" *Schible v. United States*, No. 1:12-CV-59, 2012 WL 2407695, at *1 (N.D. Ind. June 25, 2012) (quoting *Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008)). The Seventh Circuit Court of Appeals has stressed, though, that the futility of the new pleadings needs to be clear from the face of the document. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520-21 (7th Cir. 2015) ("Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend . . . ." (citation and internal quotation marks omitted)).

Here, Plaintiff waited roughly six months to seek to amend its complaint after its deadline to do so had passed. (*See* ECF 49, 53, 59). Accordingly, the Court must first address the requirements of Rule 16. Defendant primarily argues that Plaintiff was not diligent in seeking to

amend its complaint to include the "market conditions," language because it had received the discovery that gave rise to the proposed amendments as early as 2019 and 2020. (ECF 61 at 15). That being said, Defendant has allegedly been producing examples of its customer contracts as late as March 31, 2021 (ECF 59 at 2), and discovery in this matter is still ongoing. Further, Plaintiff's motion for leave to amend was prompted at least in part by Defendant's motion for sanctions. As Plaintiff explains, it was served with Defendant's proposed Rule 11 motion on March 26, 2021—roughly one month before seeking leave to amend its complaint. (ECF 64 at 4). Plaintiff was diligent in seeking to amend its complaint in an attempt to cure the supposed deficiencies identified by Defendant.

For much the same reasons, Plaintiff has also satisfied Rule 15's requirements. Indeed, Plaintiff sought to amend its complaint in response to facts supposedly learned from discovery and in response to Defendant's threat of Rule 11 sanctions. As such, there is little to suggest that Plaintiff is acting in bad faith or that Plaintiff had failed to try to correct infirmities in its complaint. Defendant will also not be unduly prejudiced if the proposed second amended complaint is allowed. As mentioned, the proposed second amended complaint largely expands on the arguments made in Plaintiff's first amended complaint. It does not add new claims or parties, and in fact does not seem to entail "more than an alternative claim or a change in the allegations of the complaint." *A. Chenery*, 68 F.R.D. at 385. To the extent that the second amended complaint would necessitate additional discovery, the discovery period is still ongoing. Further, any additional discovery would likely be limited to the terms of the parties' original contract and the Defendant's pricing scheme—topics which are apparently already the subject of discovery.

Nor is it apparent from the face of the proposed second amended complaint that it would be futile. While Defendant argues that the second amended complaint contains the infirmities necessitating dismissal as a sanction under Rule 11 (ECF 61 at 11-12), Rule 11 sanctions are not warranted for the reasons already discussed *supra*. Nor is there any indication the proposed second amended complaint would not survive a motion to dismiss pursuant to Rule 12(b)(6). Indeed, the proposed second amended complaint largely retains the "market prices" language that Judge Brady has already found could plausibly state a claim for relief. (*See* ECF 20; ECF 59-2).

Defendant also alleges that the "may vary according to market conditions" language in the proposed second amended complaint cannot support a breach of contract claim, relying on the case of *Burger v. Spark Energy, LLC*, 507 F. Supp. 3d 982, 989-990 (N.D. Ill. 2020). (ECF 11-12). While the court in *Burger* distinguished the "may vary according to market conditions" language from the "market prices" language found in the present case (finding that "Spark Energy did not make any guarantee as to how it would set the rate and instead only stated that it could consider market conditions when exercising its discretion to set the rate"), it also found that the plaintiff's contract claim could proceed on a theory of a breach on the implied covenant of good faith and fair dealing, which Plaintiff is also advancing here. (*Id*; ECF 59-1 ¶¶ 91-102).

Defendant also alleges that Plaintiff's breach of contract claim is futile because Plaintiff cannot prove the terms of the contract. (ECF 61 at 20). As already discussed, though, if the original instrument is lost or ambiguous, the terms of a contract are a question for the trier of fact. Defendant similarly contends that Plaintiff's unjust enrichment claim is futile because Plaintiff cannot show that Plaintiff ever relied on the terms of the contract and because "unjust enrichment cannot apply where a contract exists." (*Id*. at 21 (citing *DiMizio v. Romo*, 756

N.E.2d 1018, 1025 (Ind. Ct. App. 2001)).  But Federal Rule of Civil Procedure 8(d) permits a plaintiff to plead inconsistent claims.  Still more, Judge Brady, who addressed substantially the same arguments (ECF 6 at 5, 8-9), saw no need to disturb the unjust enrichment claim in ruling on Defendant's motion to dismiss (ECF 20 at 14 n.2 ("As Plaintiff's claim of unjust enrichment was pled in the alternative to its claim for breach of contract, the Court need not address it now.")).

In summary, Plaintiff has satisfied Rule 16's good cause standard.  Further, Defendant has not shown that it would be unduly prejudiced by the proposed second amended complaint, or that the second amended complaint would be futile.  Accordingly, because the Court should "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), Plaintiff's motion for leave to file the proposed second amended complaint will be GRANTED.

### III.  Conclusion

In conclusion, Plaintiff did not impermissibly attach new evidence or raise new arguments in its reply (ECF 64) to its motion for leave to file an amended complaint (ECF 58).  Accordingly, Defendant's motion to strike or in the alternative for leave to file a sur-reply (ECF 67) is DENIED.

Further, the allegations in Plaintiff's first amended complaint (ECF 31) and proposed second amended complaint (ECF 59-1) do not appear to lack a reasonable factual basis—at least at this time.  As such, Defendant's motion for sanctions (ECF 60) is DENIED WITHOUT PREJUDICE.  Finally, because Plaintiff has shown "good cause" for the belated second amended complaint per Rule 16, and because Defendant has not established that it would be unduly prejudiced or that the second amended complaint would be futile, Plaintiff's motion for

leave to amend (ECF 58) is GRANTED.  Plaintiff is afforded to and including to July 30, 2021,

file its proposed second amended complaint (ECF 59-1).[7]

       SO ORDERED.

       Entered this 23rd day of July 2021.

/s/ Susan Collins        
Susan Collins
United States Magistrate Judge

---

[7] Defendant did point to an apparent inconsistency in the proposed second amended complaint where Plaintiff removed "market prices" but failed to otherwise finish its sentence.  (ECF 61 at 19; *see* ECF 59-2 at 27; *compare* ECF 59-1 ¶ 93, *with* ECF 31 ¶ 84).  Defendant contends that this is evidence the second amended complaint is futile (ECF 61 at 19), but Plaintiff asserts that it was simply a scrivener's error and that its counsel substituted the phrase "market prices" for "'market prices' or 'market conditions.'"  (ECF 64 at 13 n. 3).  The Court views this as a simple typographical error.  Accordingly, Plaintiff is permitted to correct the error before filing the second amended complaint (ECF 59-1).